**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Crim. No. 11-CR-138 (JEB)** |
| **IVAN NITSCHKE,** | ) | |
| **Defendant.** | ) | |

**BRIEF OF *AMICUS CURIAE* THE FEDERAL PUBLIC DEFENDER FOR THE DISTRICT OF COLUMBIA IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COUNT ONE OF THE INDICTMENT**

*Amicus curiae*, the Federal Public Defender for the District of Columbia ("*amicus*"), through undersigned counsel, respectfully submits this Brief in Support of Defendant Ivan Nitschke's Motion to Dismiss Count One of the Indictment. For the reasons stated below, *amicus* respectfully submits that the legal theory purportedly supporting the 18 U.S.C. § 2422(b) charge in this case and similar cases is fundamentally flawed. The prosecution of Mr. Nitschke and other similarly situated defendants under § 2422(b) is inconsistent with the express language and obvious purpose of the statute. *Amicus* accordingly joins with Mr. Nitschke in respectfully urging the Court to dismiss Count One of the Indictment in this case.

In this brief, *amicus* seeks to provide the Court with an overview of the United States Attorney's Office for the District of Columbia's approach to enticement and travel prosecutions in this District. *Amicus* respectfully submits that this overview will be of assistance in understanding how and why the government is misapplying § 2422(b), and also why defendants are systemically disadvantaged in raising the issues presented by Mr. Nitschke's Motion to

Dismiss. In addition, this brief addresses why the reverse-sting operation employed in Mr. Nitschke's case and similar cases does not comport with the plain text or purpose of § 2422(b).

## BACKGROUND

### A. The Statutory Framework.

The "enticement and travel" cases brought in this District can be divided into three basic categories: (1) alleged enticement cases prosecuted under 18 U.S.C. § 2422(a) or (b); (2) alleged travel cases prosecuted under 18 U.S.C. § 2423(a) or (b); and (3) cases that fall within both of the aforementioned categories, because the defendant both allegedly enticed a minor and allegedly traveled across state lines with the intent to engage in sexual activity with the minor.

#### 1. The Enticement Statute.

The alleged enticement cases are prosecuted under § 2422(a), § 2422(b), or both. Under § 2422(a), a defendant may be prosecuted for "knowingly persuad[ing], induc[ing], entic[ing] or coerc[ing] any individual to travel in interstate or foreign commerce . . . to engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempt[ing] to do so." The maximum term of imprisonment prescribed in § 2422(a) is 20 years. The sentencing guidelines range for first time offenders is generally 46-57 months imprisonment.[1]

---

[1] For a variety of reasons, Judges in this District and elsewhere have often used their discretion under Booker v. United States, 543 U.S. 220 (2005), to vary downward in these cases and sentence defendants well below the advisory Guidelines ranges. See, e.g., United States v. Rivera, 09-082 (Robertson, J.) (defendant with guidelines range of 135-168 months sentenced to 36 months); United States v. Makkar, 06-231 (Leon, J.) (defendant with guidelines range of 37-46 months sentenced to 18 months imprisonment after pleading guilty to travel with the intent to engage in illicit sexual conduct with 13-year old); United States v. Bartolain, 06-236 (Kessler, J.) (defendant with guidelines range of 46-57 months sentenced to 18 months

(continued...)

Under § 2422(b), a defendant may be prosecuted for "using the mail or any facility of interstate or foreign commerce" to "knowingly persuade[], induce[], entic[e] or coerc[e] any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempt[ing] to do so." In stark contrast to § 2422(a) and § 2423, a conviction under § 2422(b) carries ***a mandatory minimum of 10 years and a maximum penalty of life.***

**2. The Travel Statute.**

The alleged traveler cases are prosecuted under § 2423(a) or § 2423(b). Section 2423(a) criminalizes the transportation of a minor in interstate or foreign commerce "with the intent that the minor engage in prostitution, or in any sexual activity for which the person could be prosecuted for a criminal offense." While § 2423(a) carries a mandatory minimum of 10 years and a statutory maximum of life, this statute is not at issue in cases arising from the government's reverse-sting operations (such as Mr. Nitschke's) as, *inter alia*, it requires the existence of an actual child.

Section 2423(b) criminalizes traveling in interstate or foreign commerce "for the purpose of engaging in illicit sexual conduct with another person." There is no mandatory minimum sentence and the statutory maximum is 30 years. The sentencing guidelines range for a first time offender is 46-57 months.[2]

---

[1](...continued)
imprisonment after pleading guilty to travel with the intent to engage in illicit sexual conduct with 13-year old).

[2] See supra, n.1.

**B. The Reverse-Sting Operations.**

Over the last several years, the number of federal prosecutions for alleged enticement and travel crimes has increased dramatically in this District. The increase in prosecutions in this District has been spearheaded by the Sex Offense Section of the United States Attorney's Office for the District of Columbia ("the USAO"), which in these cases works with members of the Metropolitan Police Department/Federal Bureau of Investigation Child Exploitation Task Force. The principal technique the USAO has relied upon to increase the number of enticement and travel prosecutions in this District is a "reverse-sting" operation. The reverse-sting operation involves an undercover MPD Detective ("the UC") going on the internet and pretending to be an adult with sexual access to a minor.[3] The minor is fictitious.

In recent months, the UC has generated numerous arrests (and resulting federal cases) through two internet web sites that cater to gay men.[4] The web sites feature "chat rooms" that focus on gay dating and gay sex. Quite unlike the web sites targeted in the reverse-sting operations in cases from other Districts, which often are demonstrably concerned with discussions of child sex, *amicus* is unaware of any case involving actual minors on either of these web sites, or even a case where law enforcement has purported to be a fictitious minor on either

---

[3] For confidentiality reasons, *amicus* does not cite any specific cases in this pleading as examples of its general statements. Counsel respectfully submits that the background information set forth above is a matter of record in § 2422(b) cases in this District and should not be controversial. Counsel will send a list by letter of the cases to the Court or the government upon request.

[4] The government has repeatedly objected at preliminary hearings to defense attempts to introduce the names of these web sites. Although *amicus* sees no reason why this information should remain secret, out of respect for the government's position, *amicus* does not here identify the web sites by name. *Amicus* will of course provide this information to the Court upon request.

of these web sites. There is nothing about the name or mission of these web sites that indicates a sexual preference for children. Indeed, one has to certify that he is an adult in order to obtain access to the web sites.

The government is aware that many of the men visiting these chat rooms are problem users of methamphetamine, or "meth." Meth is a significant problem in the gay community in the District of Columbia and elsewhere. See Exhibit A (collection of newspaper articles on meth use among gay men). There is no question that the meth use of the defendants in these cases makes them especially susceptible to persuasion by the UC. See "Meth Use Comes Out of the Closet," The Washington Post, Nov. 8, 2005 (attached at Ex. A) ("Because the drug's effects can include a supercharged libido, extended periods of high energy and sleeplessness and a much-reduced ability to make sound judgments, unprotected and promiscuous sex is a high risk").[5]

In his communications with the defendants in the chat rooms, the UC purports to be a meth user, and in some cases—including Mr. Nitschke's case—states or suggests to the defendants that he will have meth available when they come to meet him. See, e.g., Def.'s Mot. to Dismiss, Ex. A at 13 (UC stating "I like T [slang for meth] myself, you?"). The communications between the UC and the defendants in the recent cases frequently feature discussions of using meth together. Those discussions often dominate the communications over any other subject, including the fictitious minor.

The reverse-sting operation begins with the UC posting his "profile" online in the chat

---

[5] See also National Institute on Drug Abuse, Infofacts: Methamphetamine, at 2 (attached as Exhibit B) ("The intoxicating effects of methamphetamine, regardless of how it is taken, can also alter judgment and inhibition and can lead people to engage in unsafe behaviors, including risky sexual behavior");

rooms. In the profile, an example of which is attached to Mr. Nitschke's Motion to Dismiss at Exhibit B, the UC poses as a gay (or at least bisexual) adult male into "no limits" sexual activity, and provides various other information, such as that he is 6'2" and has an "athletic" build.[6] As in this case, there is usually something in the UC's profile indicating he is interested in "young." Here, for example, the profile stated that the UC is "[l]ooking to meet other no limit pervs in DC I can usually host. I am into the more pervy and twisted minded, taboo, d/s, yng, etc...." Id.

The UC has testified at preliminary hearings that he intends through this profile to send the message that he is interested in extreme sex, including "dad/son," and "young." However, it is not at all clear that the UC's profile indicates an interest in actual children, as opposed to fantasy discussions or role play between consenting adults. As the government must concede, fantasy-based discussions are commonplace in internet chat rooms, especially those concerned with sexual matters. See, e.g., United States v. Gladish, 536 F.3d 646, 650 (7th Cir. 2008) (noting that "since [the fictitious minor] furnished no proof of her age, [the defendant] could not have been sure and may indeed have doubted that she was a girl, or even a woman. He may have thought (this is common in Internet relationships) that they were both enacting a fantasy.").

After the defendant responds to the UC's posting of his profile, the defendant and the UC proceed to exchange emails or instant messages. Soon thereafter, the UC turns the discussion towards a minor to whom he purportedly has sexual access.[7] The UC's statement in this case to

---

6 The UC's profile in Mr. Nitschke's case is typical. See Def.'s Mot. to Dismiss, Ex. B.

7 Although some of these operations have taken several days or even weeks, the five hours involved here is not atypical for cases in this District. Undersigned counsel has represented a client in one of these cases where the time between the initial online

(continued...)

Mr. Nitschke—that the UC was planning on "meeting my lil perv boy that I met over the summer for a few hours," see Def's Mot. to Dismiss, Ex. A at 4—is a typical introduction of the subject.

At a later point, either online or in a subsequent phone conversation, the UC will describe the minor as "turning 13," and as "very cool," "vers[atile]," "freaky," and/or "pervy." See, e.g., id. at 6. The UC describes previous sexual encounters with the minor, painting the fictitious minor as an eager and willing participant in their past sexual activities. The UC generally asks the defendant whether he would be "cool" or "good" with various sex acts involving the minor, as he did to Mr. Nitschke. See, e.g., id. at 8 (UC's questions, beginning "are you good with..."). Although Mr. Nitschke did not do so, defendants in these cases often respond in turn with descriptions of imagined sex with the UC and the minor.

Although the UC did not do so in this case, the UC often describes the minor's plans as involving a metro trip from Virginia to the District. This is apparently done because of the government's misguided view that if the UC mentions that the minor is crossing state lines, a defendant seeking subsequently to engage in sex with the minor is somehow guilty of 18 U.S.C. § 2422(a), which prohibits enticing a minor across state lines for sex.

Importantly, the UC portrays his and the minor's plans to meet for sex as a *fait d'accompli*. See, e.g., id. at 4 ("getting off at 3 and meeting my lil perv boy that I met over the summer for a few hours."). The way the UC presents the situation to the defendants, and as it was presented to Mr. Nitschke, the fictitious minor's plans to travel for sex are not in any way dependent on any communication or action by the defendants. Thus, the only issue for the

---

[7](...continued)
communication and the defendant's arrest was about an hour.

defendants is whether they want to "join in" on what, according to the UC, is already going to happen.

The UC then proposes that the UC and the defendant meet at a location in the District of Columbia. The UC suggests that the UC and the defendant get together alone first so they can perform a sex act together to prove that they are not law enforcement. According to the UC, the minor will then join them at some point thereafter. When the defendant appears at the pre-arranged meeting place and meets the UC, he is immediately arrested. The government then, with the defendant's consent or through a search warrant, attempts to obtain and search the defendant's computer for, *inter alia*, child pornography.[8]

**C. The Judicial Process.**

Following their arrest, the government charges the defendants in the enticement and traveler cases in a criminal complaint with a violation of 18 U.S.C. § 2422(b). Based upon *amicus*' understanding, the USAO always papers the cases in federal court. Although *amicus* is aware of a handful of D.C. Code dispositions in these cases, the defendants in those cases were initially charged in federal court.

The government always charges defendants with violating § 2422(b) in the complaint. This is so even where the defendant crossed state lines on his way to meeting the UC, and is therefore arguably guilty of traveling for the purpose of engaging in illicit sexual conduct under 18 U.S.C. § 2423(b). The only plausible explanation for the government's decision to always charge § 2422(b) at the complaint stage—besides the government's mistaken view that all § 2423(b) violations involving a cell phone or computer are also violations of § 2422(b)—is so that

---

[8] *Amicus* understands that process is currently underway in Mr. Nitschke's case.

the government can invoke § 2422(b)'s 10-year mandatory minimum and life maximum in support of its request for the pretrial detention of the defendant.

The government's approach to pre-indictment plea negotiations in these cases will differ depending on whether or not the defendant crossed state lines. Where a defendant crossed state lines, the government will generally offer a plea to one count of violating 18 U.S.C. § 2423(b), traveling for the purpose of engaging in illicit sexual conduct. As noted, the sentencing guidelines range for a first time offender convicted of § 2423(b) is 46-57 months. Where a defendant did not cross state lines, the government will generally offer a plea to one count of violating 18 U.S.C. § 2422(a), for enticing a minor to cross state lines. The sentencing guidelines range for first time offenders convicted of § 2422(a) is also 46-57 months.

For defendants reluctant to plead guilty at an early stage to § 2422(a) or § 2423(b), the government's Sword of Damocles is § 2422(b) and its ten year mandatory minimum. Operating under the mistaken belief that anyone who uses a cell phone or computer in an attempt to have sex with a minor is guilty of violating § 2422(b), the government threatens anyone unwilling to plead guilty to § 2422(a) or § 2423(b) with indictment and trial on § 2422(b).

Because of § 2422(b)'s ten-year mandatory minimum, the "trial penalty" in these cases is severe. Understandably reluctant to risk a mandatory minimum sentence of ten years, and also mindful of the effect that the lascivious nature of the government's evidence may have on jurors, defendants almost always accept the government's pre-indictment plea offer.[9] This is true even

[9] Of the dozens of enticement prosecutions brought in this District pursuant to the government's reverse-sting operations, *amicus* is aware of only two that have gone to trial, United States v. Brandon Laureys, and United States v. Troy Lewis. Based on *amicus'* review of the pleadings and appellate briefs, the defendants in those cases did not litigate the issues raised (continued...)

where the government's evidence that the defendant intended to engage in sex with the minor—as opposed to, for example, seeking the UC's promised methamphetamine, and/or seeking sex with the UC only—is not strong. *Amicus* submits that the government's threat of a § 2422(b) prosecution and its ten-year mandatory minimum has had a powerful chilling effect on the motions practice in these cases, not to mention the exercise of the defendants' right to trial.

Where the defendant crossed state lines to meet with the UC and the fictitious minor, a charge of traveling with illicit intent under 18 U.S.C. § 2423(b) may be an appropriate disposition. The primary question in these cases is the defendant's intent, and if the defendant stipulates to the required intent, the guilty plea is legally sound. For defendants who did *not* cross state lines, however, there is no federal statute that criminalizes intrastate (or intra-D.C.) travel for the purpose of engaging in illicit sexual activity. Thus, in order to avoid prosecution under § 2422(b) and the risk of a 10-year sentence, defendants in these cases are left with little choice but to accept the government's offer and plead guilty to 18 U.S.C. § 2422(a), which involves enticing a minor to cross state lines for sexual activity. Defendants accept this plea despite the fact that the only evidentiary basis for the jurisdictional element of this charge is the UC's offhand comment that the minor would be taking the metro to D.C. from Virginia.

---

[9](...continued)
by Mr. Nitschke's Motion.

## DISCUSSION

### I. SECTION 2422(b) DOES NOT CRIMINALIZE THE INTENT TO ENGAGE IN SEXUAL ACTIVITY WITH A MINOR.

Under the government's apparent theory of § 2422(b), the statute criminalizes any effort to engage in sex with a minor that even tangentially involves the use of a computer or cell phone.[10] Relying on an interpretation of § 2422(b) that tortures its statutory language beyond all recognition, as well as a misunderstanding of the law of attempt as it applies to § 2422(b), the government argues that individuals who travel to meet with the UC and his fictitious minor for sex have violated the statute because they intend to "induce" sex with the minor once they are in the minor's presence. Thus, under the government's theory, anyone intending to have sex with a minor and who uses a cell phone or the internet has violated not only numerous local laws, but also section § 2422(b), because they are (or, rather, will be) attempting to induce a minor.

Contrary to the government's view, § 2422(b) does not embrace cases where the defendant's sole intent is illegal sexual contact with a minor. See Def.'s Mot. to Dismiss at pp. 5-11. As explained in Mr. Nitschke's Motion to Dismiss, § 2422(b) criminalizes certain communications. See 18 U.S.C. § 2422(b). Where the crime is an attempt, the proscribed communications are those that are part of an attempt to persuade, induce, entice, or coerce a

---

[10] Section 2422(b) states in full:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can he charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

minor to engage in sexual activity. See id. Unless the illicit communications occur within the special maritime or territorial jurisdiction of the United States, the illegal communications must take place using the mail or any facility or means of interstate commerce. See id.

As every circuit to address the issue has recognized, intending to have sex with a minor is not the same as intending to persuade, induce, entice, or coerce the minor, and § 2422(b) criminalizes only the latter. See United States v. Hughes, 632 F.3d 956, 961 (6th Cir. 2011) ("Section 2422(b) . . . was designed to protect children from the act of solicitation itself—a harm distinct from that proscribed by § 2423 [which criminalizes an intent to engage in illicit sex]"); United States v. Hofus, 598 F.3d 1171, 1178 (9th Cir. 2010) (recognizing, "like numerous other Circuits," a distinction between an intent to persuade and an intent to commit a criminal sex act; and holding that in a prosecution under § 2422(b) an intent to persuade is the requisite intent); United States v. Lee, 603 F.3d 904, 914 (11th Cir. 2010) ("the government must prove the defendant intended to cause assent on the part of the minor, *not that he acted with the specific intent to engage in sexual activity*" and ""[w]ith regard to conduct, the government must prove that the defendant took a substantial step *toward causing assent, not toward causing actual sexual contact*." (internal quotation marks and citations omitted) (emphasis added)). See also *A Better Way To Stop Online Predators: Encouraging A More Appealing Approach To § 2422(B)*, 40 Seton Hall L. Rev. 691, 721 (2010) (recognizing that § 2422(b) "does not target a predator's attempt to have sex with a minor; it only targets his attempt to persuade"). Thus, while traveling to meet the UC and the minor may be a substantial step towards attempted sexual abuse, it is *not* a substantial step towards a violation of § 2422(b).

## II. THE GOVERNMENT'S TORTURED INTERPRETATION OF § 2422(b) DOES VIOLENCE TO THE PLAIN LANGUAGE OF THE STATUTE AND ITS PURPOSE.

As the plain text of § 2422(b) makes abundantly clear, the statute was intended as a tool for law enforcement to apprehend and convict sex predators who seek out children online or through other facilities of interstate commerce. See *A Better Way To Stop Online Predators*, 40 Seton Hall L. Rev. at 694-98 (reviewing § 2422(b)'s legislative history). Numerous courts have recognized the common-sense proposition that some cyber-predators will seek out children through adult intermediaries, and have accordingly sustained convictions where the defendants enticed minors indirectly through adults, such as the fictitious minors' purported parents. See Def.'s Mot. to Dismiss at 10-11 (discussing cases). But those cases have in no way altered § 2422(b)'s focus on the cyber-predator who uses the latest technology to stalk children online.[11]

As interpreted and enforced by the USAO in this District in its reverse-sting operations, however, the government is charging § 2422(b) against a very different kind of defendant. Instead of apprehending the internet predator who is actively seeking children online–such as the kind of defendant one sees time after time in the cases from other Districts—the USAO is instead arresting gay men interacting in adults-only chat rooms that have no history or reputation as locations where minors go online. Moreover, instead of arresting individuals who have attempted to persuade minors, the arrests are of defendants who have been persuaded *by the UC* to meet him and the fictitious minor for drugs and sex. The situation becomes even more remote

[11] See H.R. Rep. No. 105-557, at 11-12 (1998), as reprinted in U.S.C.C.A.N. 678, 680 (Congress describing the need for the legislation as that, "'cyber-predators' often cruise the internet in search of lonely, rebellious or trusting young people. The anonymous nature of the on-line relationship allows users to misrepresent their age, gender or interests. Perfect strangers can reach into the home and befriend a child.").

from the offenders § 2422(b) is meant to target in that, as the government is fully aware, the defendants in these cases are often struggling with meth use, and are therefore agreeing to the UC's propositions not because they are pedophiles, but because they are compulsive and exceedingly susceptible to the power of the UC's suggestions, particularly on sexual matters. These defendants are also powerfully motivated by the UC's dangling of meth as a "carrot" to reward their travel to the meeting place.

As discussed in Mr. Nitschke's Motion to Dismiss, there are numerous state statutes that apply to an individual who travels inside a state (or inside D.C.) in an attempt to sexually abuse a child. See Def.'s Mot. to Dismiss at 17 n.8. There is accordingly no gap in the child exploitation laws that needs filling through a tortured interpretation of § 2422(b). Indeed, where an individual travels crosses state lines with illicit intent, § 2423(b) already provides a basis for federal jurisdiction. As discussed above, Congress provided for no mandatory minimum in such cases, and the sentencing guidelines provide for a sentencing range of 46-57 months.

Under the government's theory in Mr. Nitschke's case and similar cases, however, § 2422(b) criminalizes precisely the same conduct as § 2423(b), but merely exchanges the requirement that the defendant crossed state lines with the requirement that the defendant at some point in the offense made use of a means or facility of interstate commerce. But the marked differences in the statutory language between § 2422(b) and § 2423(b) preclude that interpretation. Compare § 2422(b) ("Whoever, using the mail or any facility or means of interstate or foreign commerce . . . knowingly persuades, induces, entices, or coerces any [minor] to engage in . . . any sexual activity . . .") with § 2423(b) ("A person who travels in interstate commerce . . . for the purpose of engaging in any illicit sexual conduct . . . shall be fined under

this title or imprisoned . . ."). Moreover, it makes no sense that Congress would have prescribed such dramatically higher penalties for violations of § 2422(b) (a mandatory 120 months, and life maximum) if the required level of culpability were exactly the same as for § 2423(b). What both the express language and higher penalties conclusively demonstrate is that § 2422(b) applies to a qualitatively different kind of offender–not the kind the USAO is apprehending through its reverse-sting operation as carried out in its current form.

**CONCLUSION**

WHEREFORE, for the reasons stated above, as well as those set forth in Mr. Nitschke's Motion to Dismiss Count One of the Indictment, *amicus* respectfully submits that Count One of the Indictment in this case should be dismissed.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

___________/s/_________________
JONATHAN S. JEFFRESS
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500