## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Crim. No. 11-CR-138 (JEB)** |
| | ) | |
| **IVAN NITSCHKE,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

### DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION
### TO MOTION TO DISMISS COUNT ONE OF THE INDICTMENT

Mr. Ivan Nitschke, the defendant, through undersigned counsel, respectfully submits this Reply to the Government's Opposition to Motion to Dismiss Count One of the Indictment.

The government's Opposition is classic Jekyll & Hyde.[1]  As Dr. Jekyll, the government correctly recognizes that § 2422(b) does not criminalize an attempt to engage in sexual conduct with a minor.  But as Mr. Hyde, the government then applies § 2422(b) to Mr. Nitschke's conduct in a way that would criminalize precisely that.  The government's Opposition does not explain how Mr. Nitschke attempted to criminally persuade a minor to engage in sexual activity, and for very good reason:  under the wholly undisputed facts and as a matter of law, Mr. Nitschke clearly did not do so.  Accordingly, Count One of the Indictment must be dismissed.

---

[1]     Robert Louis Stevenson, "The Strange Case of Dr. Jekyll and Mr. Hyde" (1886).

**DISCUSSION**

I.    **THE GOVERNMENT'S OPPOSITION DOES NOT AND COULD NOT
      RECONCILE THE PLAIN LANGUAGE OF § 2422(b) OR ITS CASE LAW WITH
      COUNT ONE OF THE INDICTMENT.**

"[I]n all statutory construction cases, we begin with 'the language itself [and] the specific

context in which that language is used.'" McNeill v. United States, -- U.S. --, No. 10-5258, 2010

WL 2175212, at *3 (June 6, 2011) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 341

(1997)). No matter how badly the government twists and turns the statutory language of 18

U.S.C. § 2422(b), the words "persuades, induces, entices, or coerces" will never mean "accepts,

agrees to, or acquiesces in." Thus, given the evidence in this case—and there is absolutely no

dispute about what that evidence is, see infra, Part VII—Mr. Nitschke cannot possibly have

violated § 2422(b).

In pages 7-12 of its Opposition, the government agrees with the defense and correctly

recognizes that § 2422(b) does not criminalize an attempt to have sex with a minor. See, e.g.,

Gov't Opp'n at 7 ("[I]t is worth noting that the parties appear to agree that the attempted conduct

prohibited by 18 U.S.C. § 2422(b) is not an attempt to have sex with a minor, but rather the

attempt to persuade, induce, entice, or coerce a minor."). The government then spends the next

14 pages of its Opposition analyzing the undisputed facts of Mr. Nitschke's case in a manner

entirely at war with the legal standard it just embraced. See Gov't Opp'n at 13-27. In derogation

of the plain language of § 2422(b) and the applicable case law, the government repeatedly argues

that Mr. Nitschke violated § 2422(b) solely because he attempted to engage in sexual conduct

with a minor. See, e.g., Gov't Opp'n at 17 (Mr. Nitschke's intent "was to carry out the agreed-

upon plan of sharing the minor 12-year-old boy sexually with Detective Palchak"). While the

intent and conduct the government alleges may violate any number of other criminal statutes,

they are not a violation of 18 U.S.C. § 2422(b)—and at least one part of the government's own

brief concedes as much.

Notwithstanding the Jekyll & Hyde nature of its Opposition, it appears the government

agrees with the defense that to violate § 2422(b), a defendant must do <u>something</u> that

demonstrates his intent to criminally persuade a minor via a facility of interstate commerce.  <u>See</u>

Gov't Opp'n at 9 ("Thus, with regard to intent, under § 2422(b), the government must prove only

the intent to persuade, induce, entice or coerce or attempt to so [sic].").  To hold anything less

would vitiate entirely the statute's central requirement that a defendant attempt an act of criminal

persuasion.[2]  But despite its 31-page length, the government's Opposition at no time addresses

<u>how</u> Mr. Nitschke attempted to persuade the minor or the UC, other than through conclusory

assertions or by citing evidence that simply does not establish an intent to persuade, induce,

entice, or coerce, a minor into having sex.[3]  The following are the government's ill-fated efforts

to describe how Mr. Nitschke violated § 2422(b):

•      On page 15:  "The defendant's chats and conduct in this case demonstrate his clear intent

        and attempt to persuade, induce, entice, or coerce who he believed to be a minor, to

---

[2]      <u>See</u> <u>infra</u>, Part VI.

[3]      The incoherence of the government's § 2422(b) theory in this case is evident from the fact that the government cannot even decide who it is Mr. Nitschke was supposedly attempting to persuade.  <u>Compare</u> Gov't Opp'n at 12 ("As the case law indicates, the attempted enticement is premised on a defendant's communications and persuasion of an adult with access to a minor, and reliance of [sic] that adult's 'influence and control' over the minor . . . .") <u>with</u> <u>id.</u> at 15 ("The defendant's chats and conduct in this case demonstrate his clear intent and attempt to persuade, induce, entice, or coerce [someone] who he believed was a minor, to wh[om] Detective Palchak claimed he had access, to engage in sexual activity.") <u>and</u> <u>id.</u> (discussing "[t]he evidence of the defendant's intent to entice or induce the fictitious minor").

3

which [sic] Detective Palchak claimed he had access to, to engage in sexual activity."

• Later on page 15:  "The defendant's intent is clear from his initial statement, 'I like the way you think . . . . taboo, young etc . . . . party friendly here too . . . how goes?'"

• On page 16:  "After the defendant made clear his interest in the underage boy and after learning that Detective Palchak would soon have him available, the defendant emphatically agreed."

• Later on page 16:  "The defendant's intent was further corroborated by his concerns about law enforcement."

• On page 17:  "Additionally, the defendant expressed a willingness and desire to meet Detective Palchak and the child to engage in sexual activity that same day as soon as possible, stating, 'I'm in Alexandria . . . mobile . . . happy to meet up with you as soon as you're able to.'"

• And on page 24:  "As stated above, the defendant's attempted enticement occurred based on his communications with Detective Palchak about the sexual acts he wanted to commit with the minor boy, and arrangements for a time and place of meeting later that day[.]"

While the foregoing arguments may shed light on Mr. Nitschke's intent to have sex, they do not remotely address how Mr. Nitschke's words or actions establish an intent to persuade, induce, entice, or coerce a minor into having sex.  Indeed, the conclusion the government itself draws from the evidence on intent is that it "ma[kes] very clear that his intent was to carry out the agreed-upon plan of sharing the 12-year-old boy sexually with Detective Palchak."  Gov't Opp'n at 17.  But even if true, that conduct does not violate § 2422(b), as pages 7-12 of the government's own brief make perfectly clear.

4

The obvious explanation for the government's inability to state how Mr. Nitschke attempted to persuade the UC or the fictitious minor is that Mr. Nitschke <u>never did so</u>.  That inescapable fact alone seals the fate of Count One.  Tellingly, the only place that the government explains precisely how it believes that Mr. Nitschke violated § 2422(b) is in a single footnote, buried on page 17 of its Opposition.  The footnote states, in relevant part:

> The defendant's attempted enticement is based on his communications with Detective Palchak to try to join in the sexual activity with the minor.  The defendant unequivocally affirmed this in his chats with Detective Palchak, stating "top vers here . . . . yeah . . . . into all that . . . and ready to join in."

Gov. Opp. at 17 n.15.  The government cites to no authority supporting the proposition that a defendant's acceptance of an offer to "join in" a pre-arranged potential sexual encounter constitutes an attempt to persuade, induce, entice, or coerce the minor to engage in sex—nor could it.  No such authority exists.  No matter how hard the government strains to equate the two, accepting someone's offer to do something and knowingly persuading him/her to do it are two very different things.

## II.   THE ADULT INTERMEDIARY CASES DO NOT JUDICIALLY REPEAL § 2422(b)'S CENTRAL REQUIREMENT THAT A DEFENDANT ATTEMPT TO CRIMINALLY PERSUADE A MINOR.

In its effort to circumvent the plain meaning of § 2422(b)'s express terms, as well as the numerous cases recognizing the statute's focus on the nature of the defendant's communications, the government relies predominantly on an Eleventh Circuit case, <u>United States v. Murrell</u>, 368 F.3d 1283, 1287 (11th Cir. 2004).  In <u>Murrell</u>, the Eleventh Circuit was one of the first appellate courts to address the issue of whether a defendant could have the requisite intent to violate § 2422(b) where he had communicated with an adult intermediary only.  In that case, the defendant

attempted to arrange for sex with a minor on two occasions.  First, after entering the America

Online "family love" chat room, Murrell contacted a detective posing as the adult mother of a 13-

year old girl.  See id. at 1284.  During their exchange, Murrell expressed an interest in meeting

the mother and daughter for a "discreet sexual relationship."  See id.  In a subsequent email, he

stated, "I would like to be able to get intimate with you and [your daughter] if the spark is there,"

and provided his phone number.  Id.

Subsequently, the same detective was working in an undercover capacity in a chat room

entitled "Rent F Vry Yng," this time posing as the father of a 13-year old daughter.  Id.  He

received a message from Murrel, "Hi.  Are you renting daughter?"  Id.  Murrell asked if the

daughter "enjoyed being rented."  Id.  He also inquired whether the daughter had had sex yet and

questioned whether she would "go along."  Id. at 1284-85.  The purported father asked Murrell

whether he was serious and what he had to offer in exchange for sex with his daughter.  Id. at

1285.

In subsequent phone conversations, Murrell explained the seriousness of his intentions.

He expressed that he wanted to have oral sex and intercourse with the daughter, and stated "what

I actually recommend is maybe once or twice, just me and her."  Id.  Over the next few days,

Murrell and the detective continued to communicate online, culminating in an agreement that

Murrell would meet the purported father and daughter at a hotel and that Murrell would pay the

father $300 for sex with the fictitious minor.  Id.  When Murrell showed up at the hotel, he was

arrested.  Id.

In appealing his conviction under § 2422(b), Murrell argued that "he could not have

intended to induce a minor to engage in illegal sex acts without speaking to a person he believed

to be a minor." Id. at 1287. "Put another way, Murrell contends that the minor's inducement may not be effected indirectly via an intermediary, and that accordingly, he could not have intended to induce a minor to engage in sex by speaking only to a go-between." Id.

The Murrell court rejected the defendant's argument that he could not have violated § 2422(b) because he communicated only with an adult intermediary. The court held that "[b]y negotiating with the purported father of a minor," Murrell attempted a violation of § 2422(b). Id. at 1287. As mentioned, the multi-day "negotiations" between Murell and the purported father of the minor included Murrell's initial request to "rent" the daughter, questions about whether the daughter would "go along," recommendations and proposals from Murrell about Murrell's sexual activities with the daughter, and an offer of a cash payment to the father of $300.

In addition, in terms of evaluating the defendant's intent to criminally persuade, the court emphasized Murrell's belief that the undercover detective in the case was purporting to be the minor girl's father, who "presumably exercised influence over the girl." Id. at 1287; see also id. (purported father was "acting as an agent or representative" of minor). Thus, because of the familial relationship, Murrell intended that his negotiations with the father, which included offering him a cash payment of $300, would ineluctably translate into criminal persuasion of the minor.

Contrary to the government's argument, the logic of Murrell does not support a § 2422(b) charge against Mr. Nitschke. That is because, quite unlike Murrell, Mr. Nitschke said nothing to the UC intended to persuade either the UC or, in turn, the minor. In stark contrast to the facts in Murrell, Mr. Nitschke did not negotiate with the UC for sexual access to the minor, nor did he

offer the UC something in return.[4]  Indeed, there was nothing to negotiate or offer for; the way

the situation was presented to Mr. Nitschke, the minor was a ready and willing participant in an

activity already planned by the UC prior to ever communicating with Mr. Nitschke.  The minor's

plans were in no way contingent on <u>anything</u> communicated or done by Mr. Nitschke; <u>a fortiori</u>,

the minor's plans were not contingent on any persuasion by Mr. Nitschke using a facility of

interstate commerce, as § 2422(b) clearly requires.  Put differently, because of the way the UC

presented the situation to Mr. Nitschke, Mr. Nitschke never had the opportunity <u>to choose</u>

whether or not to attempt the criminal persuasion of a minor.  <u>See generally</u> Reply Brief of

<u>Amicus Curiae</u>, at 1-5.  Thus, quite unlike the defendant in <u>Murrell</u>, Mr. Nitschke never had the

opportunity to—and in fact did not—try to induce the fictitious minor into having sex, either

directly or indirectly through the UC.  Accordingly, Mr. Nitschke cannot be guilty of violating

§ 2422(b).

---

[4]        In an obvious misrepresentation of Mr. Nitschke's position, the government
argues that Mr. Nitschke's Motion to Dismiss "suggests that when a defendant negotiates with an
adult intermediary for sexual access to the minor, an offer or promise of 'things of value' is
required." Gov. Opp. at 10 n.9.  While it is true that the vast majority of the adult intermediary
cases do include the defendant offering something of value as part of his attempt to criminally
persuade a minor, <u>see</u> <u>United States v. Douglas</u>, 626 F.3d 161, 162-63 (2d Cir. 2010) (defendant
told adult intermediary he would provide minor with "sex training" services without harm to
minor and also repeatedly promised cash payments in exchange for access); <u>United States v. Lee</u>,
603 F.3d 904, 908-17 (defendant "repeatedly discussed whether, how, and when [the purported
mother] would grant Lee sexual access to her daughters," sent adult intermediary graphic photos
intended for purported minor girls, and also promised gifts); <u>Murrell</u>, 368 F.3d at 1287 ("By
negotiating with the purported father of a minor [including promising to pay $300], Murrell
attempted to [induce] the minor to engage in sexual activity with him."), the defense has in no
way suggested that an offer of money or other gifts is a <u>sine qua non</u> for a § 2422(b) adult
intermediary prosecution.  <u>See</u> Def. Mot. at 10 (noting that a defendant's negotiation with an
adult intermediary for sexual access to the minor, including by offering something of value, is a
"recurring fact pattern in § 2422(b) cases").  But even the government must agree that a
defendant must do something to try and criminally persuade a minor in order to violate
§ 2422(b), and Mr. Nitschke did not.

The government likewise relies on a second adult intermediary cases that is similarly distinguishable.  In <u>United States v. Nestor</u>, 574 F.3d 159, 160-61 (3d Cir. 2009), the court's consideration of the case was limited to "[t]he issue [of] whether a defendant who uses an adult intermediary, rather than direct contact with a child, to attempt to persuade, induce, entice, or coerce the child to engage in sexual activity can be held to violate 18 U.S.C. § 2422(b)."  The Third Circuit, without "burden[ing] readers with the details of Nestor's interactions with [the law enforcement officers] in their role as a stepfather to the young victim Nestor sought," stated that "Nestor evinced his intent to violate § 2422(b) in his [over 50] emails and telephone conversations."  <u>Id.</u> at 161.

Counsel has obtained and reviewed the briefs from the <u>Nestor</u> appeal.  <u>See</u> Ex. 1 (selected pages from background section of appellate brief for the United States in <u>United States v. Nestor</u>, No. 08-2535 (3d Cir.)).  In stark contrast to the evidence in this case, the facts at issue in <u>Nestor</u> fully supported a conviction under § 2422(b).  Unlike the situation here, in <u>Nestor</u>, the defendant posted an ad on Craigslist, "anybody into family fun?"  <u>Nestor</u>, 574 F.3d at 160.  When the law enforcement officer and purported stepfather responded "family fun sounds great, reply with age, limits, a photo would be great," Nestor replied "<u>I was hoping you could supply the young ones.</u>" Ex. 1 at 8 (emphasis added).  When the purported stepfather responded that he could supply "boys between the ages of 4-13," Nestor told him that he was "all talk," but to prove himself the stepfather could "set it up."  <u>Id.</u> at 8-9; <u>see</u> <u>also</u> <u>id.</u> (defendant telling purported stepfather to "set it up for me" and "prove to me you are for real").  When the police officer said he had nothing to prove, Nestor responded:

> look im tired of these endless emails...im just looking to get with a boy discreetly

9

...if you can arrange it fine..or if you can get me young porn...the plan is I would met with your first...have a little sex with you...ie we expose ourselves touch each other..so each of us knows the other is not a cop,,,then we go do our thing with a boy..if this works for you let me know..if not...thats kewl..please no endless emails of debating what to do...let's do it.

Id. at 9.

Later, Nestor informed the police officer that "I prefer the real thing or real porn...emails do shit for me." Id. at 10. When the purported stepfather said he could obtain child pornography, Nestor responded "can we meet tonight? how soon can u get us a boy?" Id. at 11 (emphasis added); see also id. at 12 ("can u at least stop by with one movie and your step son or not" (emphasis added)). When Nestor and the officer were finally making meeting plans, Nestor asked "did you talk to the step son about this? how long do you want to stay for?" Id. at 15. Thus, in contrast to this case, the defendant's attempt in Nestor to criminally persuade was amply demonstrated from the online communications.

**III.   ASSUMING ARGUENDO THAT MR. NITSCHKE'S ACCEPTANCE OF THE UC's INVITATION FOR SEX CONSTITUTES CRIMINAL PERSUASION UNDER § 2422(b)—WHICH IT DOES NOT—COUNT ONE STILL FAILS BECAUSE THE UC DID NOT PURPORT TO HAVE INFLUENCE OR CONTROL OVER THE FICTITIOUS MINOR.**

The government's Opposition argues that if a defendant knowingly "persua[des]" an adult intermediary with "influence and control" over a minor to provide him with sexual access to the minor, than he has violated § 2422(b). Gov't Opp'n at 12.[5] Even assuming arguendo that Mr.

_____

[5]   Notably, in this portion of its Opposition, the government alleges that Mr. Nitschke's communications were intended to persuade the UC. At other times, the government indicates that the communications were intended to persuade the minor through the UC. See supra, at 3 n.3. The government's confusion about an issue as fundamental as who Mr. Nitschke supposedly was trying to persuade underscores the total lack of any coherent theory underlying Count One.

Nitschke somehow attempted to persuade the UC—and, as discussed, the government does not at any point state how that persuasion supposedly occurred—Count One still fails under the case law addressing § 2422(b) and adult intermediaries.  Unlike Murrell and the other adult intermediary cases, the UC here never told Mr. Nitschke he had influence or control over the purported minor, nor did he state he was in any kind of relationship with the minor that would imply influence or control.  See Murrell, 368 F.3d at 1287-88 ("Murrell's agreement with the father, who was acting as an agent or representative, implied procuring the daughter to engage in sexual activity."); Lee, 603 F.3d at 914-15 (defendant communicating with postal inspector posing as mother with access to her two minor daughters); Nestor, 574 F.3d at 160-61 (defendant communicating with purported minor's alleged stepfather); United States v. Spurlock, 495 F.3d 1011, 1013-14 (8th Cir. 2007) (defendant posing as mother offering daughters for sexual activity; "We do not believe the statute exempts sexual predators who attempt to harm a child by exploiting the child's natural impulse to trust and obey her parents."); see also Douglas, 626 F.3d at 164 (noting that a minor's "assent might be obtained . . . by persuading a minor's adult guardian to lead a child to participate in sexual activity.  Accordingly, we join our sister circuits in holding that a defendant may commit criminal enticement pursuant to § 2422(b) by communicating with an adult guardian of a minor." (citing Nestor, 574 F.3d at 162; Spurlock, 495 F.3d at 1014; and Murrell, 368 F.3d at 1286-88) (emphasis added))).

The UC in this case was not purporting to "act[] as an agent or representative" of the fictitious minor.  Murrell, 368, F.3d at 1287-88.  Not only was he not purporting to be the minor's parent or guardian, the UC said nothing that would indicate any influence or control whatsoever over the minor.  To the contrary, the only information the UC provided to Mr.

11

Nitschke was that he had met the minor "over the summer;" Ex. A at 4; that the minor was

turning 13 and that—unlike the UC—he does not "pnp;" id. at 6;[6] that the minor is "very cool,

vers and freaky;" id.; and that the minor "loves" various sex acts, id. at 8.  At no time did the UC

specify any other kind of relationship with the minor, and a fortiori, did not specify that he had a

familial relationship of the kind expressly relied upon in the adult intermediary cases such as

Murrell, Douglas, Lee, Nestor, and Spurlock.  Thus, contrary to supporting the validity of Count

One, the adult intermediary cases in fact undermine the government's § 2422(b) case against Mr.

Nitschke.

As Mr. Nitschke never attempted to persuade the UC at all, the Court need not reach the

issue of whether the UC purported to have influence or control over the UC.  To the extent the

Court does reach that issue, however, the UC did not state or even imply that he had influence or

control, and Count One fails on that basis as well.

## IV.    CONTRARY TO THE GOVERNMENT'S OPPOSITION, A DEFENDANT'S SUBSTANTIAL STEP MUST BE A SUBSTANTIAL STEP TOWARDS THE CRIME WITH WHICH HE IS CHARGED.

The government's Opposition labors under the fundamental misimpression that a

substantial step towards criminal sexual abuse—which is all the government even arguably has

here—is necessarily a substantial step towards a violation of 18 U.S.C. § 2422(b).  See, e.g,

Gov't Opp'n at 8 n.7; id. at 18 ("The defendant's concession that 'the alleged facts demonstrate

at most that [he] traveled to meet the UC and the minor for an attempted sexual encounter' is

fatal to any argument that he did not take a 'substantial step' in this case." (parenthetical

_____

[6]     Indeed, the fact that the UC claimed to be a methamphetamine user while also
claiming that the minor did not use methamphetamine indicates the opposite of "influence and
control," i.e., it suggests the minor's independence from the UC.

omitted)). The government is incorrect. A "substantial step" for § 2422(b) purposes must be a substantial step towards a violation of *§ 2422(b),* which the government acknowledges does not criminalize an attempt to have illicit sex. See, e.g., United States v. Hughes, 632 F.3d 956, 961 (6th Cir. 2011) ("Section 2422(b) . . . was designed to protect children from the act of solicitation itself—a harm distinct from that proscribed by § 2423."); Lee, 603 F.3d at 914 ("With regard to conduct, the government must prove that the defendant took a substantial step toward causing assent, not toward causing actual sexual contact."); United States v. Dwinells, 508 F.3d 63, 71 (1st Cir. 2007) ("[Section 2422(b)] criminalizes an intentional attempt to achieve a mental state—a minor's assent."). As Mr. Nitschke engaged in no communication or conduct that could be construed as criminal persuasion, there is no substantial step in this case towards a violation of § 2422(b).

The government argues that Mr. Nitschke's substantial step can be found in either one or both of two places: (1) the online communications; and (2) Mr. Nitschke's travel to meet the UC. Under the undisputed facts of this case and the law of § 2422(b), neither of the foregoing constitute a substantial step towards violating § 2422(b).

**1.      There Is Nothing In The Communications Between Mr. Nitschke And The UC That Could Possibly Constitute A "Substantial Step" Towards A Violation Of § 2422(b).**

While the government is of course correct that the "exchange of communications" between a defendant and an adult intermediary may constitute a substantial step towards a violation of § 2422(b), Gov't Opp'n at 20, whether the communications in fact do so depends on the substance of those communications. In the online communications in this case, Mr. Nitschke says nothing—and the government identifies nothing—that could be categorized as an attempt to

criminally persuade the UC.  Mr. Nitschke also says nothing that could be viewed as a step

towards criminally persuading the minor.  Given the total lack of criminal persuasion by Mr.

Nitschke in the communications between Mr. Nitschke and the UC, as well as the lack of any

statements evincing an intent to criminally persuade via a facility of interstate commerce at some

future time, the communications simply cannot be read as "strongly corroborat[ing] the firmness

of" Mr. Nitschke's intent to criminally persuade a minor in any manner (and in particular not by

a means of interstate commerce), United States v. Barlow, 568 F.3d 215, 219 (5th Cir. 2009);

there is no evidence in the communications that an "appreciable fragment" of a § 2422(b) offense

was committed, United States v. Mandujano, 499 F.2d 370, 376 (5th Cir. 1974); and there is

simply no proof "unequivocally demonstrating that [a violation of § 2422(b)] [would have]

take[n] place unless interrupted by independent circumstances," United States v. Goetzke, 494

F.3d 1231, 1238 (9th Cir. 2007).  There is no evidence of criminal persuasion in this case.

    As with the intent analysis, the government does not explain how anything said or done

by Mr. Nitschke constitutes a substantial step towards the criminal persuasion of the UC or the

minor.  While the government states that in general a defendant making plans to meet a minor

may constitute a substantial step towards a § 2422(b) offense, that can only be true if there is

evidence that the purpose of the meeting is for the defendant to criminally persuade the child

using a facility of interstate commerce—evidence that is completely lacking here.

**2.      Travel Is Not Necessary To The Completion Of The Crime And Accordingly
        Mr. Nitschke's Travel To Meet The UC Cannot Constitute A Substantial
        Step.**

    The government conspicuously avoids addressing the black letter law from Mr.

Nitschke's Motion to Dismiss holding that a substantial step must be "necessary to the

consummation of the crime." United States v. Manley, 632 F.2d 978, 987-88 (2d Cir. 1980); see also United States v. Hofus, 598 F.3d 1171, 1174 (9th Cir. 2010) ("'The conduct must be necessary to the consummation of the crime and of such nature that a reasonable observer, viewing it in context, could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute.'" (quoting United States v. Nelson, 66 F.3d 1036, 1042 (9th Cir. 1995) (emphasis added))); Spurlock, 495 F.3d at 1014 (defendant's conversation with purported mother of fictitious daughters "b[ore] the familiar hallmarks of criminal attempt" because, inter alia, "they were necessary to the consummation of the crime" (emphasis added)). As noted in Mr. Nitschke's initial motion, and as agreed to by the government, every circuit to consider the issue has held that § 2422(b) does not require any attempt at actual sexual activity. Thus, travel is not "necessary to the consummation of the crime," and therefore cannot possibly constitute the "substantial step" in a § 2422(b) prosecution.

The defense acknowledges that some courts have characterized travel as a part of he substantial step analysis. See, e.g., United States v. Brand, 467 F.3d 179, 202-04 (2d Cir. 2006); United States v. Meek, 366 F.3d 705, 720 (9th Cir. 2004) (finding a substantial step in defendant's "extensive sexual dialog, transmission of a sexually-suggestive photograph, repeated sexual references as to what Meek would do when he met the boy, and his travel to meet the minor at a local school"). However, the defense is unaware of any case—and the government cites none—relying solely on the defendant's travel for the requisite substantial step. Moreover, the better reasoned cases have considered travel as relevant evidence of a defendant's intent to entice, but not as the required substantial step in the attempt analysis. See, e.g., Goetzke, 494 F.3d at 1236 ("Similarly, travel by a defendant to meet a potential victim is probative, but not

required, to advance and verify an intent to persuade, induce, entice or coerce.").

## V.   THE GOVERNMENT APPARENTLY AGREES THAT AN ATTEMPT UNDER § 2422(b) MUST TAKE PLACE USING A FACILITY OF INTERSTATE COMMERCE.

In Mr. Nitschke's Motion to Dismiss, the defense argued that under § 2422(b), the government must prove that Mr. Nitschke (1) intended to criminally persuade a minor <u>using a facility of interstate commerce</u>; and (2) took a substantial step towards criminal persuasion <u>using a facility of interstate commerce</u>. Def.'s Mot. at 15-17; <u>see also</u> § 2422(b) (criminalizing attempted enticement "using . . . any facility or means of interstate or foreign commerce").  The government appears to agree with the defense—at least some of the time.  <u>Compare</u> Gov't Opp'n at 24 ("[T]he defendant's attempted enticement occurred based on his communications to Detective Palchak about the sexual acts he wanted to commit with the minor boy, and arrangements for a time and place of meeting later that day, both of which involved 'using a facility or means of interstate commerce.'") <u>with</u> <u>id.</u> ("[T]he fact that the defendant traveled to the meeting location . . . is conduct which . . . courts have found also constituted a 'substantial step' towards completion of the crime.").

There is simply no way to read § 2422(b) other than as criminalizing a defendant's <u>communications</u>.  In Mr. Nitschke's case, those communications are limited to the emails attached as Exhibit A to Mr. Nitschke's Motion to Dismiss, which are also set forth at pages 13-17 of the government's Opposition (and again at pages 21-22 and again at pages 25-26).  Because those communications do not demonstrate an intent on Mr. Nitschke's part to criminally persuade a minor online, and also do not demonstrate a substantial step towards criminally persuading a minor online, Count One must be dismissed.

16

**VI.    IT IS ONLY THE GOVERNMENT'S INCORRECT INTERPRETATION OF §
        2422(b) IN THIS CASE–AND NOT § 2422(b) ITSELF—THAT WOULD
        FEDERALIZE NEARLY EVERY CASE OF CRIMINAL SEXUAL ABUSE.**

When properly applied, the government uses § 2422(b) to prosecute defendants who have

made communications through facilities of interstate commerce that seek to persuade, induce,

entice, or coerce a minor to engage in illegal sexual activity.  Contrary to the government's

Opposition, Mr. Nitschke does not in his Motion to Dismiss contest either Congress's ability to

enact <u>that</u> statute or the government's ability to enforce it.

However, under the unique approach taken by the government here, § 2422(b) does not

resemble the law that is set forth by its express terms.  The government's interpretation of

§ 2422(b) would not only criminalize the intent to persuade a minor to engage in sexual activity,

but also the intent to have sex with a minor, so long as a facility of interstate commerce is even

tangentially involved.  Indeed, the government's Opposition essentially concedes this point in

describing Mr. Nitschke's criminal intent as "to carry out the agreed-upon plan of sharing the

minor 12-year-old boy sexually with Detective Palchak."  Gov't Opp'n at 17.

Congress could very easily have enacted the statute the government mistakes § 2422(b)

for, if that was what Congress wanted to do—which it clearly was not.  That statute would read,

in relevant part, as follows:

> Whoever uses the mail or any facility or means of interstate or foreign
> commerce . . . for the purpose of engaging in illicit sexual activity with any
> individual who has not attained the age of 18 years, and for which any person can
> be charged with a criminal offense, shall be fined under this title and imprisoned
> not less than 10 years or for life.

Congress did not, however, enact that statute—and in fact specifically rejected it.[7]

\* \* \*

If § 2422(b) criminalizes the intent to have sex—and that is an accurate description of the very most the government's evidence arguably demonstrates in this case—then § 2422(b) is essentially duplicative of every state's sexual abuse statutes, including the numerous D.C. Code provisions applicable to this case.  See Def.'s Mot. to Dismiss at 17-18 n.8 (collecting statutes). That is not a result remotely supported by the express language of § 2422(b).

## VII.   MR. NITSCHKE'S MOTION IS RIPE FOR REVIEW.

Despite the fact that—for the purpose of his Motion to Dismiss—Mr. Nitschke does not contest any of the factual allegations underlying Count One,[8] the government nevertheless argues that the Court should defer ruling on Mr. Nitschke's legal arguments until the government presents the uncontested facts at trial.  The Court need not pause in rejecting this argument.

Rule 12(b)(2) provides that:  "A party may raise by pretrial motion any defense,

---

[7]	While there is no need for the Court to examine the legislative history of § 2422(b) given the statute's plain language, Congress expressly rejected a version of § 2422(b) substantially the same as the fictitious statute set forth above.  See A Better Way To Stop Online Predators:  Encouraging A More Appealing Approach To § 2422(B), 40 Seton Hall L. Rev. 691, 696 (2010) (noting Congress' rejection of statute proscribing contact with minors through facilities of interstate commerce "for the purposes of engaging in sexual activity").

[8]	In footnote 11 of the Government's Opposition, the government states that, for the purpose of responding to Mr. Nitschke's Motion to Dismiss, it relies on the text of Mr. Nitschke's chats with the UC (attached as Ex. A to Mr. Nitschke's Motion to Dismiss); the Memorandum of Findings of Fact and Statement of Reasons in Support of Order of Detention (Dkt. No. 5); and the statement of facts in support of the criminal complaint (Dkt. 1-1).  For the purposes of his Motion, Mr. Nitschke does not dispute any of the factual allegations contained in these materials—or, for that matter, any other factual materials upon which the government wishes to rely.  He does, however, dispute the conclusions of law supporting the Order of Detention.

objection, or request that the court can determine without a trial of the general issue."[9]  As the

government itself points out, no less than the United States Supreme Court has interpreted the

language of Rule 12 to "permit[] pretrial resolution of a motion to dismiss the indictment when

'trial of the facts surrounding the commission of the alleged offense would be of no assistance in

determining the validity of the defense.'"  Gov't Opp'n at 4 (quoting United States v. Covington,

395 U.S. 57, 60 (1969)[10]).  While the defense both acknowledges and respects the jury's role in

our criminal justice system as fact-finder, in this case, there are simply no facts in dispute and

thus no facts for a jury to find.  United States v. Yakou, 428 F.3d 241, 247 (D.C. Cir. 2005)

(recognizing that "the existence of undisputed facts obviated the need for the district court to

make factual determinations properly reserved for a jury").[11]  And while the government

---

[9]      The government appears to fault Mr. Nitschke for failing to invoke subsection
(b)(3) of Rule 12 in relation to his substantive and jurisdictional arguments.  (See Gov't Opp'n at
3 n.2.)  In doing so, the government demonstrates a fundamental misunderstanding of the
structure of Rule 12.  It is subsection (b)(2)—not (b)(3)—that gives parties the authority to file
pretrial motions.  Subsection (b)(3) merely specifies those motions that must be raised before
trial in order to avoid waiver.  Notably, "claim[s] that the indictment or information fails to
invoke the court's jurisdiction or to state an offense," do not need to be raised pretrial and thus
are not subject to the strictures of Rule 12(b)(3).  Fed. R. Crim. P. 12(b)(3).  In any event, it
would appear that the government's argument is somewhat trivial in light of the fact that Mr.
Nitschke filed his Motion to Dismiss well before trial and there is no question of waiver.

[10]      Rule 12 has been amended several times since Covington was decided.  As of
1969, the authorizing language of Rule 12 was found in subsection (b)(1), which read:  "Any
defense or objection which is capable of determination without the trial of the general issue may
be raised before trial by motion."  See Covington, 395 U.S. at 60.  The Advisory Committee
Notes to the 1974 and 2002 amendments make clear that the change in wording was stylistic only
and no change in practice was intended.

[11]      It is important to note that the D.C. Circuit in Yakou left open the specific
question addressed in this case; i.e., it did not address a situation in which the government
objected to the district court's pretrial determination of a defendant's motion to dismiss.  The
Yakou court noted that "[o]nly the Eleventh Circuit has held that even where there are

(continued...)

generally objects to this Court's consideration of Mr. Nitschke's motion, it does not proffer any

argument as to how and/or why a trial of the facts will be of any assistance in determining the

<u>legal</u> issues Mr. Nitschke raises in his Motion.  The reason for this is simple.  The government

cannot point to any factual disagreements among the parties or identify even a single issue of fact

to which Mr. Nitschke is not willing to stipulate.[12]  Under such circumstances, consideration of a

defendant's motion to dismiss is entirely appropriate.  <u>See</u> <u>Covington</u>, 395 U.S. at 61 (where

there is no "factual controversy," motion to dismiss appropriate before trial unless the

government can "show[] a need for further factual inquiries"); <u>see also</u> <u>United States v. Smith</u>,

866 F.2d 1092, 1097 (9th Cir. 1989) (one of the purposes of Rule 12(b) is "conservation of

judicial resources by facilitating the disposition of cases without trial").

---

[11](...continued)
undisputed facts a district court may not engage in a pretrial determination of the sufficiency of
the evidence."  428 F.3d at 247 (also noting that "there was no indication" in the Eleventh Circuit
opinion "that the government failed to object in the district court").  Since <u>Yakou</u>, judges in this
district have granted pretrial motions to dismiss on sufficiency grounds over the government's
objection.  <u>See, e.g.</u>, <u>infra</u> n.13.
       It should also be noted here that Mr. Nitschke's bases his Motion on both substantive and
<u>jurisdictional</u> grounds.

[12]      The defense recognizes that courts generally favor stipulations, as they "are
entered into in order to dispense with proof over matters not in issue, thereby promoting judicial
economy at the convenience of the parties."  <u>See</u> <u>United States v. Montgomery III</u>, 620 F.2d 753,
757 (10th Cir. 1980) (quoting 9 J. Wigmore, Evidence §§ 2588-2597 (3d ed. 1940)).  As stated
above, for the purpose of his Motion to Dismiss, Mr. Nitschke stipulates to the entirety of the
factual record in this case.  If the Court deems necessary, Mr. Nitschke would have no objection
to the government's submission of an offer of proof, <u>see, e.g.</u>, <u>United States v. Kelly</u>, No. 99-
10100-01, 2000 WL 433093 (D. Kan. Mar. 2, 2000) (in case charging violation of § 2422(b),
after district court explained its legal reasoning to parties with respect to issue raised in
defendant's pretrial motion to dismiss, government agreed to submit offer of proof to district
court for disposition of legal issue), though it would seem that, in light of Mr. Nitschke's
stipulation and the nature of the evidence in this case, an offer of proof would add little value to
the state of the record.

The Sixth Circuit's opinion in United States v. Levin, 973 F.2d 463 (6th Cir. 1992), is particularly instructive.  In Levin, the district court granted pretrial dismissal of a criminal indictment, over the government's objection, where "the undisputed extrinsic evidence" showed that the defendants could not, as a matter of law, have formulated the necessary criminal intent. 973 F.2d at 469-70.  In its colloquy with the government at the hearing on the defendant's motion, the district court observed:  "[I]f this is your evidence, it would be a directed verdict at the end, and I don't know why I have to sit through two or three weeks while you put on what we know the evidence will be.  There doesn't seem to be a dispute of the facts in this case.  It's an unusual criminal case in that sense." Id. at 468 n.1.  Echoing the district court's sentiments and relying, inter alia, on the Supreme Court's decision in Covington, the Sixth Circuit affirmed, noting that, because "the operative facts . . . were undisputed[, . . .] a two or three week trial of the substantive criminal charges would not have assisted the district court or this court in deciding the legal issues" raised by the defendant's pretrial motion to dismiss.  Id. at 467; see also United States v. Jensen, 93 F.3d 667 (9th Cir. 1996) (Fletcher, J. concurring) (where issue presented is legal and underlying facts are not in dispute, merits of motion to dismiss should be reached; "[o]therwise, the same issue with the same evidence will be raised at trial, the defendant will again move to dismiss . . . , the district court will again rule on the motion, and the issue will be back before this court"); United States v. Jones, 542 F.2d 661, 665 (6th Cir. 1976) (upholding district court's pretrial dismissal of indictment because "[t]he facts surrounding the alleged offense were virtually undisputed and trial of the substantive charges would not substantially assist the Court in deciding the legal issue raised by the motion to dismiss the indictment").

The fact of the matter is that in circumstances such as these—where the court is asked to

make a legal determination based on undisputed facts—district courts routinely entertain pretrial

motions to dismiss.  See, e.g., United States v. Sunia, 643 F. Supp. 2d 51 (D.D.C. 2009) (Walton,

J.); United States v. Naegele, 367 B.R. 1 (D.D.C. 2007) (Friedman, J.);[13] United States v.

Naegele, 341 B.R. 349 (D.D.C. 2006) (Friedman, J.); United States v. Hsia, 24 F. Supp. 2d 33

(D.D.C. 1998) (Friedman, J.) (reversed on other grounds); see also United States v. Kelly, No.

99-10100-01, 2000 WL 433093 (D. Kan. Mar. 2, 2000).  Mr. Nitschke respectfully requests that

this Court do the same.

## CONCLUSION

WHEREFORE, for the reasons stated above, and in Mr. Nitschke's Motion to Dismiss,

the defense respectfully submits that Count One must be dismissed.

Respectfully submitted,
_____/s/_____
David Benowitz
Bar # 451557
Counsel for Ivan Nitschke
Price Benowitz LLP
406 Fifth Street, NW
Washington, D.C.  20001
(202) 271-5249
David@PriceBenowitz.com

---

[13] The government places great emphasis on Judge Friedman's opinion in United States v. Safavian, 429 F. Supp. 2d 156, 159 (D.D.C. 2006) (see Gov't Opp'n at 4, 6), in which he concludes that the defendant's motion to dismiss is not ripe for review.  But Safavian is easily distinguished, as at the time the defendant filed his motion to dismiss in that case, there were "numerous material facts [that] remain[ed] in dispute." 429 F. Supp. 2d at 158.  The Safavian opinion itself acknowledges that "in 'unusual circumstances' . . . pretrial dismissal of the indictment is possible on sufficiency-of-the-evidence grounds, and that is 'where there are material facts that are undisputed and only an issue of law is presented.'" Id. (quoting Yakou, 428 F.3d at 247).  In fact, in United States v. Naegele, Judge Friedman found that such "unusual circumstances" presented themselves and, over the government's objection, granted the defendant's motion to dismiss based on its application of law to the undisputed facts.  See 367 B.R. 1, 13-14.