**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Crim. No. 11-CR-138 (JEB) |
| | ) |
| IVAN NITSCHKE, | ) |
| | ) |
| Defendant. | ) |

**REPLY OF *AMICUS CURIAE* TO THE GOVERNMENT'S RESPONSE
TO THE *AMICUS* BRIEF IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS COUNT ONE OF THE INDICTMENT**

*Amicus Curiae*, the Federal Public Defender for the District of Columbia, through

undersigned counsel, respectfully submits this Reply to the Government's Response to the

*Amicus* Brief in Support of Defendant's Motion to Dismiss Count One of the Indictment.

**DISCUSSION**

**I.     THE REVERSE-STING OPERATION UTILIZED IN THIS DISTRICT DENIES
INDIVIDUALS THE OPPORTUNITY TO MAKE THE FUNDAMENTAL
CHOICE CRIMINALIZED UNDER § 2422(b) AND PENALIZED BY A TEN-
YEAR MANDATORY MINIMUM TERM OF IMPRISONMENT.**

Criminal conduct is generally the result of a proscribed choice.  With very few

exceptions, society does not punish individuals criminally unless they have willfully chosen to do

wrong, whether or not they know their conduct is a crime.  Different criminal statutes proscribe

different criminal choices, and also prescribe different criminal penalties.

Section 22-308 of the D.C. Code (first degree child sexual abuse) is one of several D.C.

Code provisions that criminalizes the sexual abuse of a minor, including attempted criminal

sexual abuse.  If an individual crosses state lines with the intent to commit sexual abuse, 18

U.S.C. § 2423(b) criminalizes his conduct and sets forth a penalty of up to thirty years.  Section

2422(b), however, criminalizes an altogether different kind of conduct; to violate the statute, one

must use means or facilities of interstate commerce "to persuade[], induce[], entice[], or

coerce[]" a minor to engage in illegal sexual activity—that is, sexual activity that would be

illegal under the D.C. Code or some other statute.  Notably, in passing § 2422(b), Congress did

*not* criminalize the use of facilities of interstate commerce to commit sexual offenses against

minors or commit acts criminalized by the D.C. Code and the laws of the other states.[1]  Instead, §

2422(b) criminalizes those who persuade, induce, entice, or coerce a minor to engage in such

violations and prescribes particularly severe penalties for that conduct.

     In its Opposition, the government fails to recognize that the particular reverse-sting

operation it has utilized in Mr. Nitschke's case and similar cases denies individuals the

opportunity to make the fundamental criminal choice that underlies § 2422(b).  That is, because

of the unique way that law enforcement implements the reverse-sting in this District, defendants

are never presented with the choice of whether—or not—to attempt to induce, persuade, entice,

or coerce a minor to engage in sexual activity.  Because the UC presents defendants with a pre-

arranged sexual encounter with a minor who, as the UC presents it, needs no persuasion, there is

simply no opportunity for the defendants to demonstrate—or, better yet, not demonstrate—that

they are the kind of people who would attempt to criminally persuade minors to engage in sexual

---

[1]     Though missing from the government's description of § 2422(b)'s legislative
history, *see* Gov't. Resp. *Amicus* at 12-13, Congress expressly rejected a version of § 2422(b)
making it illegal to contact a minor over the internet for the purpose of engaging in sexual
activity.  *See* H.R. 3494, 105th Cong. § 2422 (as reported by House, Oct. 13, 1998) (amending
previous versions of the Protection Act by erasing the proposed "contact" provision).

activity.  The result of the government's misinterpretation of § 2422(b) is an over-inclusive group

of defendants who do not all share the level of culpability that the express language of § 2422(b)

clearly requires and for whom § 2422(b)'s particularly harsh penalties are intended.

A comparison to the enticement cases from other districts is illuminating.  In the vast

majority of the cases discussed in Mr. Nitschke's Motion to Dismiss and the government's

Opposition, the defendants on appeal appeared to concede the intent to entice and instead argued

that the government must prove the additional element of an intent to have sex.  *See, e.g., United

States v. Dwinells*, 508 F.3d 63, 68 (1st Cir. 2007) ("The appellant contends that an additional

'intent' element should be read into the statute:  an intent that the enticed conduct actually take

place."); *United States v. Goetzke*, 494 F.3d 1231 (9th Cir. 2007) (holding that § 2422(b) does

not require proof of an intent that the sexual acts take place); *United States v. Brand*, 467 F.3d

179, 202 (2d Cir. 2006) (same); *United States v. Thomas*, 410 F.3d 1235, 1244 (10th Cir. 2005)

(same); *United States v. Bailey*, 228 F.3d 637, 639 (6th Cir. 2004) (same).

The reason the defendants in cases from other districts argued that § 2422(b) requires the

additional element of an intent to have sex is quite clear from the facts of those cases.  Due in

one part to the way law enforcement constructed the reverse-sting operations in those districts,

and due in the other part to the defendants meeting § 2422(b)'s required level of culpability, the

defendants had engaged in extensive attempts to entice minors, either directly through online or

telephone conversations with the purported minors, *see* Def.'s Mot. to Dismiss at 9-10 (collecting

cases), or indirectly through the fictitious minors' purported parents, s*ee id.* at 10-11 (collecting

cases).  Unlike the case at issue here, *not a single one* of the adult intermediary cases from other

districts involve a defendant being presented with an invitation to join a third party and a minor

for a sexual rendezvous that had already been arranged.

Thus, because the intent to entice was clearly proven, the defendants on appeal in the adult intermediary cases from other districts have generally argued that the government must prove the additional element of an intent to have sex.  The courts have emphatically—and, given § 2422(b)'s clear purpose of criminalizing certain criminal *communications*, correctly—rejected that argument.[2]

Here, the government's § 2422(b) charge against Mr. Nitschke suffers from precisely the opposite problem addressed in the § 2422(b) cases from other Districts.  The government's evidence may arguably support Mr. Nitschke's intent to have sex, but does not remotely establish the "clearly separate and different intent[]" to criminally persuade a minor.  *Bailey*, 228 F.3d at 639.  The reason for this is straightforward.  In the § 2422(b) cases cited by the government, law enforcement in the other Districts conducted the reverse-sting operations in a dramatically different manner from that used here.  Most importantly, the operations were conducted in a manner that presented defendants with a clear choice:  to attempt to persuade a minor to engage

---

[2]      The only case arguably in tension with this line of cases—and a case that the government surprisingly emphasizes in its Opposition to Mr. Nitschke's Motion to Dismiss, *see* Gov. Opp. at 19 and n.16—is *United States v. Gladish*, 536 F.3d 646 (7th Cir. 2008).  In *Gladish*, the court held that even extremely sexual communications with a purported minor—without more—did not constitute a substantial step under § 2422(b).  *Id.* at 649.  As the government would doubtlessly agree, *Gladish* is an outlier.  It is also one of the very few cases embracing a reality of internet sex talk:  that a defendant "may have thought (this is common in Internet relationships) that they were both enacting a fantasy."  *Id.* at 650.  Indeed, *Gladish* recognizes the very real likelihood that Mr. Nitschke and similarly situated defendants did not believe the UC had access to a minor at all, believed that it was all just internet fantasy talk (sometimes engaged in while under the influence), and in fact traveled only to have sex with the UC (and perhaps obtain methamphetamine from him).  As the government must agree, nearly all of the targets of the particular reverse sting operation practiced in this District say exactly that in their post-arrest interviews.  *Amicus* respectfully submits that it is highly unlikely that they are *all* dissembling.

4

in sexual activity, either directly or through his or her parents, or not to do so.  Those individuals who attempted to persuade the minor made the choice that § 2422(b) criminalizes and became defendants; those who did not were never prosecuted.

Here, by contrast, the government conducted the sting operation in Mr. Nitschke's case in a fundamentally different manner.  The only choice presented to Mr. Nitschke was whether to meet the UC for what the UC stated would be a sexual encounter with the UC and the fictitious minor.  That may be a criminal choice of some variety—and, in particular, a local variety—but it very clearly is not the choice that 18 U.S.C. § 2422(b) criminalizes.

## II.   THE GOVERNMENT'S ATTEMPT TO PREVENT ANY COURT FROM EVER ADDRESSING THE LEGAL MERITS OF ITS § 2422(b) POSITION IS CONTRARY TO THE INTERESTS OF JUSTICE.

The government's attempt to prevent *any* court from *ever* passing on its deeply flawed approach to § 2422(b) cases in this District is neither surprising nor new.  *See* Gov't. Resp. *Amicus* at 3-7; Gov. Opp. at 3-7.  In the past several weeks alone, the government has gone to extraordinary lengths in the two most recent § 2422(b) cases to *even prevent a Magistrate Judge from determining probable cause.*  In *United States v. Robert Welch*, 11-CR-153 (JEB) (Docket Sheet attached as Ex. 1), the parties conducted a preliminary hearing on the § 2422(b) charge against Mr. Welch on May 12, 2011.  *See id.*  At that hearing, defense counsel argued a lack of probable cause based on many of the same arguments made in Mr. Nitschke's Motion to Dismiss.  At the conclusion of the hearing, Magistrate Judge Kay deferred the probable cause determination so that he could examine the § 2422(b) case law prior to ruling as to probable cause.  *See id.* (noting "[p]robable [c]ause determination deferred").  Rather than allowing Magistrate Kay to complete his review of the cases and issue a ruling on probable cause, the

5

government indicted the case in the interim and divested Magistrate Kay of jurisdiction.  See id.

at Dkt. # 5.

The government's effort to avoid judicial scrutiny in *United States v. Michael Jimenez*,

11-CR-185 (EGS) (Docket Sheet attached as Ex. 2), was even more desperate.  On June 6, 2011,

and in anticipation of a probable cause hearing scheduled for June 7, 2011, the defense submitted

a Memorandum of Law to Magistrate Judge Kay setting forth the same arguments made in Mr.

Nitschke's Motion to Dismiss. *See id.* at Dkt. No. 4. *Within 24 hours*, the government obtained

an indictment, divesting Magistrate Kay of jurisdiction just moments before Mr. Jimenez's

scheduled preliminary hearing. See id. at Dkt. No. 5.  Furthermore, the government promptly

declared that Mr. Jimenez's plea offer to a lesser offense was withdrawn, to severely punish him

(and, more to the point, his lawyers) for daring to attempt to exercise his right to a preliminary

hearing.

The government, in at least the two cases cited above, has gone to great lengths to divest

the Magistrate Court of jurisdiction in order to avoid *even a probable cause ruling* on the legal

merits of the government's § 2422(b) position.  The government's concerted and repeated efforts

to divest the Magistrate of jurisdiction prior to the preliminary hearings makes a mockery of the

very principle of *Bordenkircher v. Hayes*, 434, 357, 364 (1978), that the government purports to

rely upon.  *See* Gov't. Resp. at 10 (quoting *Bordenkircher*, 434 U.S. at 364, for the proposition

that "'so long as the prosecutor has *probable cause* to believe that the accused committed an

offense defined by the statute, the decision whether or not to prosecute, and what charge to file or

bring before a grand jury, generally rests entirely in his discretion.'" (emphasis added)).

The government's deliberate strategy of preventing judicial review of its interpretation of

a very serious criminal statute is not worthy of the United States Attorney's Office for the District of Columbia.  The government's game plan for the § 2422(b) cases could not be more obvious:  to delay judicial review of its position as long as conceivably possible, so that it can continue to improperly threaten defendants in these cases with prosecution under § 2422(b) and a ten-year mandatory minimum term of imprisonment, essentially force the defendants to plead and waive their appeals, and thereby prevent *any court* from *ever* addressing its tangled approach to this statute.[3]  Not incidentally, the government's constant threat of a § 2422(b) charge and its penalty also effectively prevents defendants from going to trial on 18 U.S.C. §§ 2422(a) or 2423(b) charges and raising entrapment defenses—defenses that may be quite viable given the extremely aggressive tactics utilized in the government's reverse-sting operation in this district.

A legal ruling on the government's interpretation of § 2422(b) at this time will surely benefit all parties.  The government's serial misuse of § 2422(b) could ultimately become very costly for everyone involved, including the courts, in terms of post-conviction litigation and other potential consequences.  As set forth in Mr. Nitschke's Motion to Dismiss and his Reply, there is no dispute about the facts of Mr. Nitschke's case, and therefore no legal barrier to resolution of Mr. Nitschke's Motion to Dismiss.  *See, e.g.*, Def.'s Reply, Part VII.

---

[3]     As in *United States v. Maria Hsia*, 24 F. Supp. 2d 33, 54 (D.D.C.) (Friedman, J.) *rev'd on other grounds*, 176 F.3d 517, 336 (D.C. Cir. 1999), "[t]o recite the bare factual allegations of the indictment and the words of [the applicable statutes] does not capture the Alice-in-Wonderland-like maze of logical leaps and tangled inferences that are required in order to find that" Count One adequately alleges an offense.

III.   **THE GOVERNMENT DOES NOT DENY THAT ITS REVERSE-STING OPERATION TARGETS HOMOSEXUAL MEN NOR THAT IT INTENTIONALLY LEVERAGES DRUG ADDICTION.**

The government correctly describes *amicus*'s concerns over the targeted enforcement of its reverse-sting operation as a discussion of policy.  *Amicus* has not requested nor received any discovery demonstrating that law enforcement or the USAO has a "discriminatory purpose" in exclusively targeting gay men, as required for a selective prosecution claim.  *United States v. Armstrong*, 517 U.S. 456, 1487 (1996).  However, what it is impossible to deny is the "discriminatory effect" of the government's actions.  *Id.*.  At no time in its Response does the government deny that the arrests from its reverse-sting operations have, at least most recently, been generated exclusively from two web sites that cater exclusively to gay men.  And rather than accepting *amicus*'s offer to provide the government with a list of cases detailing this claim (which, despite its suggested ignorance, the government already knows to be true), *see Amicus* Brief at 4 n.3, or denying *amicus*'s allegation, the government simply dismisses it as "unsubstantiated."  *See, e.g.*, Gov. Resp. *Amicus* at 6.  While the government is correct that the discriminatory effect of its reverse-sting operation may not be directly relevant to Mr. Nitschke's Motion to Dismiss, it is nevertheless important background information for the Court—not to mention the government—to consider.

With respect to methamphetamine users, on the other hand, there is no question that the government is targeting these individuals.  *See, e.g.,* Def.'s Mot. to Dismiss, Ex. A at 13 (UC stating "[s]ounds good, I like T myself, you?").  The communications regarding methamphetamine are not the result of particular defendants happening to raise methamphetamine use with the UC over the course of the chats.  To the contrary, the UC's

8

profile itself contains a very clear invitation to "fellow' methamphetamine users, by prominently noting that the UC is "into the more pervy *and twisted minded*..." *Id.*, Ex. B (emphasis added). That this is lingo for methamphetamine use is confirmed not only by the shockingly high number of methamphetamine addicts arrested pursuant to the government's reverse-sting operation, but also by Mr. Nitschke's initial response to the UC's profile in this very case. *See* Def.'s Mot. to Dismiss, Ex. A at 1 ('I like the way you think . . . . taboo, young etc . . . . *party friendly here too* . . . how goes?" (emphasis added)).

If the USAO is truly interested in arresting pedophiles of the kind one sees time and again in the cases from other districts (as opposed to just generating sex offense case statistics), then it would not spend its time purposefully seeking out and aggressively pursuing individuals who would agree—and that is all Mr. Nitschke and many others did:  agree—to most anything sexual the UC proposes when they are either under the influence of methamphetamine or seeking it. The arrest and conviction of one true pedophile who actually violated § 2422(b) is worth far more than the arrests of dozens of defendants like Mr. Nitschke, who clearly did not.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
JONATHAN S. JEFFRESS
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500